IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 09-cv-01135-REB
(Consolidated with Civil Action No. 10-cv-00462-REB)

**COLORADO RAIL PASSENGER ASSOCIATION**,

       Plaintiff,
v.

**FEDERAL TRANSIT ADMINISTRATION,
DENVER UNION STATION PROJECT AUTHORITY and
REGIONAL TRANSPORTATION DISTRICT, a political subdivision of the State
of Colorado,**

       Defendants.
_____

**ORDER DENYING EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER**
_____
Kane, J.

This matter is before me on Plaintiff's third Emergency Motion for Temporary

Restraining Order filed by Plaintiff Colorado Rail Passenger Association on March 12,

2010 (Doc. 63). The Association's two previous Motions (reflected and reiterated in

Docs. 35 and 52, 53 and 58) have been denied on jurisdictional and procedural grounds. I

have considered the renewed Motion and the parties' related filings, and have heard

testimony from a number of witnesses. I have jurisdiction over the parties and the subject

matter, and rule as follows:

### I. Applicable Legal Standards.

1

A temporary restraining order (TRO) a time-limited form of prospective injunctive relief available under Fed. R. Civ. P. 65. The legal standards governing the issuance of a TRO are the same as those governing preliminary injunctive relief under the same Rule.

The purpose of a preliminary injunction under Fed. R. Civ. P. 65 is to preserve the status quo between the parties pending final determination on the merits of an action. *University of Texas v. Camenisch*, 451 U.S. 390 (1981). A preliminary injunction alters the rights of the parties, affording the movant a form of relief before he has proven his case. Because it "is an extraordinary remedy," a preliminary injunction will not issue unless the right to relief is "clear and unequivocal." *SCFCILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098-99 (10th Cir.1991). *Accord Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005).

To obtain a preliminary injunction in this circuit, a movant must establish:

- substantial likelihood that the movant will eventually prevail on the merits;
- a showing that the movant will suffer irreparable injury unless the injunction issues;
- proof that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and
- a showing that the injunction, if issued, would not be adverse to the public interest.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)(applying standard articulated in *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th

Cir.1980)). If the court enters an order granting an injunction, it must set forth the reasons for its issuance in specific terms, and not by reference to the complaint or other document, and must describe in reasonable detail the act or acts that are enjoined. Fed. R. Civ. P. 65(d). Any injunction that is issued must also provide for "the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

The Colorado Rail Passenger Association urges application of a relaxed or "modified" likelihood of success on the merits standard in this case, citing *Walmer v. United States* for the proposition that where the latter three *Lundgrin* factors have been shown to exist, movant need not demonstrate a "clear" or "unequivocal" likelihood of success in order to obtain prospective relief, but simply raise questions "so serious, substantial, difficult and doubtful as to make the issues ripe for litigation and deserving of more deliberative investigation." 52 F.3d 851, 854 (10th Cir. 1995). Plaintiff maintains its Amended Complaint and renewed TRO Motion meet that standard, relieving it from the otherwise higher showing necessary to obtain the relief sought.

Before addressing Plaintiff's contentions, I note that certain types of preliminary injunctions, including those that disturb the status quo or afford the movant substantially all of the relief to which movant would be entitled after a full trial on the merits, are "especially disfavored" and require an even heavier burden be met before they may issue. *See SCFCILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098-99 (10th Cir.1991), *as*

*modified by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004)(en banc) *and applied in Schrier*, 427 F.3d at 1259-60. These include preliminary injunctions that (1) disturb the status quo; (2) that are mandatory rather than prohibitory; or (3) that afford the movant "substantially all the relief he may recover at the conclusion of a full trial on the merits." *Id.* Such injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course, and movants seeking such an injunction are not entitled to rely on the modified-likelihood-of-success-on-the-merits standard and must instead make a "strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *O Centro*, at 975-96. "The burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits." *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir.1984).

While the prospective relief sought by the Plaintiff seeks is prohibitory in nature, it is by no means clear given the passage of time and Plaintiff's failure to act until construction started whether the injunction sought actually preserves, rather than disturbs, the status quo. Preparation and construction activities at the site have commenced, and Plaintiff has been aware for months that this was the case. Plaintiff filed its appeal of the Federal Transit Administration's final Record of Decision approving the plan nearly one year ago, on May 18, 2009. The Decision itself was issued and made public on October 17, 2008. Briefing on the merits of Plaintiff's appeal is nearly complete, and would have

4

already been completed had *Plaintiff* , itself, not sought three separate extensions of time to file its briefs.   Under these circumstances, does calling a halt to all activities onsite preserve or disturb the status quo?

Further, the cessation of all development activities sought by Plaintiff in its Motion is a large portion of the relief Plaintiff seeks after a full vetting of his claims on appeal. Under these circumstances, it is hard to maintain that the injunction sought should be subject to a "relaxed" or modified *Lundgrin* standard.

*Discussion.*

What is true under any applicable standard,  however, is that the substance of Plaintiff's legal challenge to the Record of Decision on appeal is vague and articulated in a circular, *ipse dixit*, manner.  Any assertion, on the record before me or adduced at yesterday's hearing, that Plaintiff is "likely to succeed on the merits" of its appeal is speculative and entirely tenuous.  The planning and NEPA procedures underpinning the project at issue took place over six years, publicly, and with input from public and private entities.  Plaintiff's legal arguments boil down to little more than repeated conclusory assertions that the NEPA process was "flawed."  Nothing more.   On the record before me, I cannot conclude Plaintiff has made a sufficient showing of likelihood of success on the merits of its appeal to warrant the action Plaintiff would have me take.

Leaving aside for the moment the question of Plaintiff's likelihood of success on the merits, there is also considerable doubt on the record before me that the balance of harms in the remaining *Lundgrin* factors favors Plaintiff.  As previously stated, Plaintiff's

delay in seeking this TRO raises a serious question as to how emergent the irreparable harm alleged actually is. Plaintiff filed its appeal in this court nine months ago and only now asks for emergency prospective relief. Briefing is nearly complete, and the matter is ripe for determination on the merits. While it is true a continuation of ground-breaking and construction activities may limit the remedy available to Plaintiff if it ultimately prevails, it certainly is also true that calling a halt to all activities – on little more than faith that Plaintiff's formulaic incantations of "flaws" in the process will be vindicated – will cause harm to the Defendants and the many public and private entities and individuals currently acting on the project. There are also competing assertions regarding the "harm" that would befall the public were I to grant or not grant the TRO. On this record, I cannot conclude the vague "human harm" Plaintiff asserts in terms of negative environmental impact or impact to the traveling public outweighs the harm that will befall other aspects of the "public" for whose benefit their elected and appointed representatives have collaborated, approved and financed the project.

In short, Plaintiff has failed to establish the balance of harms so favors the issuance of prospective injunctive relief that I should take its assurances that the administrative process was fatally flawed at face value. Everything turns on the merits of this case, and there is simply no basis on the barely extant showing made to enjoin this project at this stage of the proceedings. I note the substantive and procedural flaws raised by Defendants in their Motions to Dismiss the Complaints in this case are for Judge Blackburn to decide and I do not reach them. Their validity would obviously provide an alternate basis for a

denial of prospective, or any, relief.

Finally, I do not think this is the type of environmental case wherein the Plaintiff is acting as a sort of private attorney general for the benefit of the public such as to justify excusing or foregoing the posting of a bond under Fed. R. Civ. P. 65(c). On the contrary, the interests asserted by the Plaintiff are outweighed by the substantial damage and harm that would inure to the detriment of the numerous governmental and quasi-governmental entities performing tasks specifically approved and authorized by the electorate.

Therefore, were I to grant the instant Motion, I would do so on the condition that Plaintiff post a bond in a significant sum to compensate the enjoined entities and the public if it turned out they were improperly enjoined. Because Plaintiff acknowledges it would not be able to post a substantial bond – as much as $28,000 per day plus $5 million – the issuance of the requested TRO would be a pointless act.

For the foregoing reasons, Plaintiff's third Emergency Motion for Temporary Restraining Order (Doc. 63) is DENIED.

Dated March 18, 2010.  **s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE